Gray, J.
The defendants claim title to the property in question under an assignment made by Brown to the defendant Davidson, on the 20th of July, 1843. In order to establish their title under this assignment as against the subsequent levy made by the plaintiff Adams, by virtue of the execution issued upon the decree in favor of the plaintiff Bathbone against Brown, it is indispensable that it appear that the assignment was accompanied by an immediate delivery to Davidson, and followed by an actual and continued change of possession by him of the property assigned, or that it be made to appear that the assignment was made in good faith, and without any intent to defraud the creditors of Brown. (2 R. S., 2d ed., 70, § 5.) The only evidence to be found in the case that the assignment was followed by an immediate delivery and actual change of possession of the assigned property, is the evidence of Geough, a clerk with Davidson, in the store of the defendants Corning & Horner. About eight o’clock in the evening on which the assignment was made, this witness was requested by Davidson to go with him to the store of Brown. On the way to the store, Davidson told him “ to *311 pay attention and recollect what he heard.” After he got to the store, where he found Brown and his clerk Griffin alone, Brown told Griffin that he had made an assignment to Davidson. Davidson waited until Brown had shut up the store, when he took the key of the store and told Griffin lie would give him orders next morning, and then returned with the witness to the store of the defendants Corning & Horner. Nothing further is heard of Davidson until after the levy made by the execution in favor <of Rathbone, on the twenty-sixth of July. In the interim the store is continued open for business, and Brown and his clerk Griffin are found in it selling the assigned goods and transacting business, in all respects, as they had been accustomed to do before the assignment. No mention is made either by Davidson, Brown or his clerk Griffin, that an assignment had been made, except that Brown, while in possession of the goods, told his brother-in-law, who resided in New Jersey (and who was at the time on a friendly visit at Brown’s house) that an assignment had been made to Davidson, but that the object of it was to show Townsend & Wendell the true position of his affairs, and thus induce them to become his bail to enable him to appeal the suit, in which the plaintiff Rathbone had obtained a decree, to the court of errors, and if the assignment had the expected effect it was to be given up and become void. When the under-sheriff appeared at the store on the twenty-sixth, with the execution of Rathbone in his hands, for the purpose of making a levy upon the goods in the store, he apprised Griffin of his object. Griffin did not, as he doubtless would have done had he been in the employ of Davidson and acting under the assignment, say to the sheriff that the goods he proposed to levy upon had been assigned to Davidson, and that Brown had no property in them ; on the contrary his conduct evinced his fidelity to Brown alone, and was such as to give the sheriff to understand that the title to the goods remained in Brown, and he was anxious, on account of the temporary *312 absence of Brown, that the store should not be closed until the sheriff had seen him ; and for the purpose of inducing him not to close the store, promised that the avails of whatever goods went from the store should come into the hands of the sheriff. The ceremony of taking the key on the evening of the twentieth, considered in connection with the subsequent control over the goods by Brown, renders it apparent that the performance of that evening was a fiction. Davidson’s taking his fellow-clerk with him, and requesting him to “pay attention and recollect what he heard,” was wholly unnecessary, if he intended to comply with the exactions of good faith in taking and holding possession of the assigned property. If all had been done that ordinary prudence and caution required in reducing the property to possession and excluding others from interfering with it,• except in subordination to his title, the transaction itself would have afforded all the evidence the nature of the case demanded. Facts could then have been proved, and not merely what was heard by a fellow-clerk, taken on purpose to witness a symbolical delivery, and cautioned to pay attention and recollect what he heal'd. The evidence fails to satisfy me that there was a delivery of any kind in good faith ; it clearly establishes that there .was not an actual, and much less a continued, change of possession of the assigned property. Brown and his clerk Griffin were in the open actual possession of the property, the latter acting under the direction of the former, and each selling goods as before the assignment was made, and apparently for the benefit of Brown alone. There was no evidence that either was acting in subordination to Davidson, or for his benefit. If they were, or were acting against his will or without his consent, Griffin knew it; and if he knew it the fact was peculiarly within the knowledge of Davidson, and susceptible of being proved by placing Griffin on the stand. If the facts were not such as were plainly indicated by the conduct of Brown and Griffin, it was the duty of Davidson *313 to call Griffin, and by his evidence repel the inference; and his omission to do so strengthens it. (Cowen & Hill's Notes, 310, and cases there cited ; 1 Starkie’s Ev., 34; Id., 487.) The case, therefore, stands burdened, not only with the legal fraud resulting from the omission to take and continue the assigned property in the actual possession of the assignee, but with positive fraud in permitting Brown to sell for his own use and benefit as before. The conclusion is, therefore, irresistible that the assignment was not made for the exclusive purpose of benefiting his creditors in the order staled in the assignment, but that one object in making it was, as stated by Brown to his brother-in-law, to coerce Townsend & Wendell to become his security to appeal from the decree upon which the execution to Adams was issued, in which event it was to become void. This declaration of Brown, although objected to, was competent evidence, he having remained in possession of the goods up to and after the time the declaration was made. (Willies v. Farly, 3 Carr. & Payne, 395.) No inventory was attempted to be made by Davidson, until the day after the levy, and no evidence whatever is offered to establish the faith of this transaction except that Corning & Horner were creditors in good faith to the amount specified in the assignment. This is not enough to outweigh the effect of the fraudulent conduct of the parties to the assignment.
The bill alleges that Davidson acted under the direction of the defendants Corning & Horner in removing the goods, and that they were removed with full knowledge as well by Corning & Horner as by Davidson, that they had been levied upon by Bathbone’s execution; this allegation is not denied by Corning & Horner, except that they deny that they received any property upon their debt against Brown, with notice of a legal levy. The legality of the levy is, therefore, all that is put in issue by the pleadings, and this brings us to the question as to the sufficiency and extent of the levy. The officer making the levy entered *314 the store of Brown, where the goods on sale were within his view and subject to his immediate disposition and control, and made a general levy; nothing more was done by him. This was doubtless a sufficient levy as against the defendants, and all others who subsequently intermeddled with the goods with knowledge that a levy had been made. (Van Wyck v. Pine, 2 Hill, 668.) There were other goods belonging to Brown, not in the store, but in the garret of Brown’s house over the store, not accessible by any interior passage from the store, but by a passage on the outside; these goods were not levied upon, as is apparent from the conduct of the sheriff’s officer at the time the levy was made, and of the officer and the sheriff himself when the goods were removed by him to the auction room for sale, and from the grounds put forth by the sheriff in the bill of complaint upon which his claim is founded. The sheriff never saw these goods, and probably did not, until the return day of his execution, know that Brown had any other goo.ds than those in the store from which he was selling daily. If he had known of those goods and intended to levy upon them, they would have been taken with the other goods to the auction room for sale. Besides, the only claim the plaintiffs make in their bill to the goods stored in the garret is that after the levy they were secretly removed by Brown, or some one under his direction, to the upper part of the building, where the sheriff had no access, and there secreted until April, when they were removed by Davidson. This allegation, so far as it relates to removing and secreting the goods, is not sustained but negatived by the proofs. There was obviously no levy upon any other goods of Brown than those in the store-room entered by the sheriff.
The first exception to the report of the referee was therefore well taken, and was erroneously overruled.
The defendants’ counsel, on the argument, insisted that Corning & Horner were not chargeable with the goods, or their value, sold to them before this suit was brought. If *315 this suit had been the first proceeding towards appropriating the goods or their value to the payment of Bathbone’s debt, the position of the defendants’ counsel would have been just, and borne out by authority. But in this case an actual lien had been acquired by a seizure of the goods, as against which neither of the defendants had a right to intermeddle with them without being able to establish the validity of the assignment.
The objection to Conklin was premature. It had not appeared that he was under-sheriff when he was objected to, and after it did appear the objection was not renewed—if it had been he was indemnified and competent.
It was also objected that the plaintiffs had no common interest in the recovery that entitled them to file their bill. Each had an interest in preventing a multiplicity of suits, and having this whole matter closed by a single controversy. It could not have been done otherwise than by the course adopted; their interests were in harmony with each other, in no respect conflicting and were such as entitled them to unite in this suit.
So much of the decree of the supreme court as affirms the decree of the vice-chancellor declaring the assignment fraudulent and void, and making the injunction upon the suit brought by Davidson perpetual, should be affirmed, and the residue of the decree overruling the exceptions to the referee’s report should be reversed without costs to either party.
All the other judges concurring,
Ordered accordingly.