HENRY FRALICH, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

Although many of the technicalities of former times are still permitted to shield offenders from the punishment due to their crimes, notwithstanding the reasons which justified their adoption have long since passed away, yet the courts are gradually applying the more wise and safe rule that no error shall avail a prisoner, unless it manifestly appears that it may have done him some material injury. *Per* MULLIN, P. J.

Whether the court below was right or wrong in allowing questions to be put to the prisoner, and others, on the trial, with the view of impeaching his testimony, what the prisoner said, at any time after the commission of the offence is competent against him as admissions; and these admissions can be proved by himself, or any other person who knew of them.

When a prisoner, on trial, takes the stand as a witness in his own behalf, he is subject to the same rules of examination, and to be contradicted, as any other witness.

It is therefore competent to show that his testimony, as to being unconscious of what he did, while committing the crime, and for some time afterward, was not true. It could not be true if, very soon thereafter, he related to the witness the manner in which the crime was committed.

The counsel of a prisoner cannot be heard to assail the charge of the court, upon the trial, when he has not excepted to it, or the exception is too general to be available.

Whether or not mere words, uttered in the hearing of a person who, by reason thereof, kills another, can be permitted to reduce the killing from murder to manslaughter, it is clear that information communicated by others to the person who kills another, because of it, can never be permitted to reduce the grade of the crime.

Upon a writ of error, the court has no power to hear a motion for a new trial upon the ground that, since the trial, material evidence, favorable to the prisoner, has been discovered.

If such a motion can be made in any court, it must be made in the oyer and terminer. It cannot be made, in the first instance, at the General Term.

ERROR to the court of oyer and terminer of the county of Onondaga, upon exceptions taken on the trial.

The plaintiff in error was tried, in January, 1873, upon an indictment for the murder of Peter Shaffer, on the 3d of August, 1872, and convicted. A bill of exceptions, containing the evidence, and proceedings had upon the trial, was duly made. The questions raised on the trial sufficiently appear in the opinion of the court.

*James Noxon*, for the plaintiff in error.

*Wm. P. Goodelle*, (district attorney,) for the people.

*By the Court*, MULLIN, P. J. That the prisoner killed Peter Shaffer at Syracuse in August, 1872, is conceded ; that the killing was premeditated is conclusively established by the evidence ; the deceased had some difficulty with the prisoner's wife, and applied to her insulting and abusive epithets ; when the prisoner came to his house after the affray, the wife or a woman who was with her, told him what the deceased had said concerning his wife ; he immediately went into a room where a bayonet and policeman's club were kept, took one in each hand and left the house ; he went to a saloon near by, where deceased and his wife were ; he found the door locked, forced it open and went in ; as he approached the deceased, his wife placed herself between

the prisoner and her husband to protect him ; the prisoner struck her on the head with his club ; as she fell her husband caught her in his arms, and while he thus held her the prisoner stabbed him with the bayonet, killing him instantly.

He, obviously, formed the purpose to kill instantly, on hearing the abusive terms which the deceased had applied to his wife ; he then went to the room where the weapons were with which his murderous purpose could be most certainly accomplished ; he took possession of them, and on his way to the saloon removed the sheath from the bayonet to prevent any chance for mistake in the use of it upon the body of Shaffer. To kill Shaffer he found it necessary to preface the murder by the crime of breaking into the saloon. His operations were those of a man capable of forming a plan upon the instant—whose mind operated rationally in the use of means to the end—and his memory of the place where the weapons he wanted were stored was active and undisturbed. We have thus established every element that either the common law or our statute requires to be established in order to justify a conviction for the crime of murder in the first degree.

The prisoner set up his insanity as a defence to the indictment. He failed, totally, to establish it, and the jury, whose province it was to pass upon the questions, found him to be sane. So well satisfied is his counsel with the propriety of the finding that he makes no point in relation to it upon the argument before us.

Unless, therefore, some error was committed by the oyer and terminer upon the trial, to the prejudice of the prisoner, the conviction must be affirmed.

The prisoner's counsel insists that the grand jury that found the indictment, and the petit jury that rendered the verdict of guilty, were illegally drawn.

There is nothing before us showing any such irregu-

larity, and of course the objection is unavailing to the prisoner.

The counsel requested the court below to quash the indictment and discharge the prisoner, because of certain defects in the indictment. They are purely technical, and have been repeatedly held to furnish no ground for discharging the prisoner.

When objections like those insisted on by the counsel were available, the prisoner was refused the aid of counsel and the right to examine witnesses in his own defence. The courts were, under the circumstances, compelled to interpose these technicalities in order to save the accused from an unjust conviction.

Many of these rules are still permitted to shield offenders from the punishment due to their crimes, although the reasons which justified their adoption have long since passed away.

It is the application of these absurd technicalities at this day that is bringing the administration of criminal law into contempt. We are gradually getting rid of them, and the courts are applying the more wise and safe rule, that no error shall avail a prisoner to escape punishment, unless it manifestly appears that it may have done him some material injury.

The prisoner's counsel insists that certain questions were improperly allowed to be put to the prisoner when testifying in his own behalf on the trial, and that a witness was permitted to contradict the prisoner as to certain matters sworn to by him.

It is not material whether the court was right or wrong in allowing questions to be put to the prisoner and others with the view of impeaching his evidence.

What the prisoner said at any time after the commission of the offence was competent against him as admissions, and these admissions could be proved by himself or any other person who knew of them.

When the prisoner takes the stand as a witness in his

own behalf, he is subject to the same rules of examination and to be contradicted as any other witness; it was, therefore, competent to show that his testimony as to being unconscious of what he did while committing the crime, and for some time afterwards, was not true; it could not be true if very soon thereafter he related to the witness the manner in which the murder was committed, as the witness testified he did.

The prisoner's counsel cannot be heard to assail the charge of the court, as he has not excepted to it. The only exception taken to it, if it can be called an exception, is altogether too general to be available. But the result would not be changed if the counsel had excepted to it. There may be expressions in it that are open to criticism; but taking it as a whole, it gives a correct exposition of the law applicable to the case, and is as favorable to the prisoner as his counsel had a right to ask or expect. Indeed, the counsel expressed his satisfaction at the rulings of the court, at the time, but he now insists that the charge was subsequently changed by the court so as to be inconsistent with that part of it he approved.

The point urged most strongly on the court was, that the prisoner was entitled to the same reduction of the crime from murder in the first degree to manslaughter, because he had been told of the offensive epithets applied to his wife, that he would have been had he been present and heard them, and was thereby so enraged as to be incapable of forming a premeditated design to kill Shaffer.

We shall not stop to inquire whether mere words uttered in the hearing of a person who, by reason thereof, kills another, can be permitted to reduce the killing from murder to manslaughter; but of one thing we feel assured, that information communicated by others to the person who kills another because of it, can never be permitted to reduce the grade of the crime, and for two reasons, viz:

Fralich *v*. The People.

First. It must be admitted that in all cases, without regard to whether the communication made is true or false, a falsehood will produce the same effect upon the mind, if it is believed to be true, that it would if it was true. The person uttering the falsehood, although with the intention of causing the death of another, incurs no legal guilt, notwithstanding he is in fact the real murderer.

Second. The effect of admitting such evidence would be to relieve men of violent passions from any obligation to keep them under control, and murder would be committed on the slightest provocation.

It is impossible to anticipate to what extent a representation that an injury has been done to a member of a man's family will arouse his passions and excite him to avenge the wrong. A slight injury would be sufficient with some men, while it would but slightly disturb others. If the fact be that the person becomes enraged and kills another in consequence of the representation, it must follow that however slight the injury that produces the frenzy, it must be received in mitigation of the degree of the crime, if killing results from it. The men of the most violent tempers are thus made the least criminal when they allow their passions to impel them to the commission of murder.

Men must be taught that their safety lies in controlling, not in giving loose rein to their passions. When they destroy human life, with a premeditated design to accomplish such a purpose, the safety of society demands that the highest penalty provided by the laws should be inflicted upon the one who commits the crime.

The prisoner's counsel has called upon us to entertain a motion for a new trial, upon the ground that since the trial he has discovered material evidence favorable to the prisoner.

Such a motion we have no power to hear. If it can be made in any court, it must be made in the oyer and

terminer. It cannot be made in the first instance in the general term.

The judgment and conviction are affirmed, and the proceedings remitted to the Onondaga oyer and terminer.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 12, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]