THE STATE v. CLINTON, *Appellant.*

1. **Forgery**: UNDER SECTION 28, P. 1091 WAG. STATUTE, an indictment for forging a promissory note is sufficient, if it correctly states the purport of the instrument. It is not necessary that the date of the making or maturity shall be given.

2. **Proof of Handwriting.** When the genuineness of a written instrument is the subject of investigation, it is not competent to prove the execution of other papers having no connection with the case, and then, by the testimony of experts, who have compared them with the instrument in question, to show that the latter is a forgery.

3. **Criminal Law**: DEFENDANT AS A WITNESS: IMPEACHMENT. If a defendant in a criminal case becomes a witness in his own behalf, as permitted by the act of April 18th, 1877, (Acts of 1877, p. 356,) he thereby subjects himself to the same rules as to cross-examination and impeachment as other witnesses.

4. **Statutes** in derogation of the common law are to be so construed as not to infringe upon the rules or principles of the common law to any greater extent than is plainly expressed.

*Appeal from Phelps Circuit Court.*—HON. V. B. HILL, Judge.

*L. F. Parker* for appellant.

*J. L. Smith, Attorney-General,* for the State.

NORTON, J —Defendant was indicted in the circuit court of Phelps county, at its February term, 1877, for forgery in the third degree, in forging a promissory note of one Robert F. Springer, for the sum of $5,500. Defendant was duly arraigned at the February term, 1878, of said court, put upon his trial, which resulted in a verdict of guilty, and a judgment assessing his punishment at five years' imprisonment in the penitentiary, from which he has appealed to this court. We give the following summary of the tendency of the evidence and the proceedings in the cause in the trial court, from which the principal grounds of error relied upon for a reversal of the judgment will appear.

The evidence on the part of the State tended to show that the note mentioned was a forgery; that Springer was dead; that some time after his death the defendant presented said note to one of the executors of the estate, in Salem, who pronounced it a forgery, the defendant insisting that it was genuine; that the note was thereupon delivered to W. G. Pomeroy, Esq., to be by him kept till the matter was settled; that Springer was a wealthy man and worth over $30,000, $18,000 of which was in money, notes and accounts; that the defendant repeatedly offered to sell said note. To this the defendant objected, which objections being overruled, he excepted. When the State offered the note in evidence, the defendant objected, because the indictment did not sufficiently describe the same, which objections were by the court overruled.

During the trial the State was permitted to prove that the signature of Springer to two other papers, which were in no way connected with the cause being tried, were genuine; and the signatures thus proved were submitted to two persons, experts in comparing handwritings, who were allowed to compare the same with the signature of Spring-

er alleged to be forged, and give their opinion as to whether they were written by the same person. This action was excepted to by defendant.

The defendant testified, in his own behalf, that he had deposited the sum of five thousand five hundred dollars with Springer, to prevent his creditors from getting at the same; that he let Springer have three thousand dollars at one time, for which he took a due-bill, and twenty-five hundred dollars at another, whereupon Springer gave him the note mentioned; that it was genuine and signed by Springer. Defendant also offered evidence tending to show that such a due-bill as he described had been seen in his possession; that Springer was at his house on the day named by him; that the defendant and Springer were seen in a small room together.

In rebuttal the State introduced several witnesses and propounded to each of them this question: " Do you know the defendant's general character in the neighborhood where he lives, for truth and veracity, honesty, chastity and morality?" To which the defendant objected, because the defendant had not put his character in issue; because the testimony, if proper at all, ought to be confined to truth and veracity, and because the question as to each trait of character should be asked separately; which objections being by the court overruled, the defendant excepted. Said witnesses then answered that they knew the general reputation of defendant in the town of Rolla, and that it was bad; that defendant was well known there, but lived about five miles east thereof.

The objection made by defendant to reading the note in evidence, because it was not sufficiently described in the indictment, we think was properly overruled.

1. FORGERY: under section 28, p. 1091, Wag. Stat.

Section 28, Wag. Stat., p. 1091, provides: " That in any indictment for forging any instrument, it shall be sufficient to describe such instrument by any name or designation by which the same shall be usually known, without setting out any copy or *fac simile* thereof, or other-

wise describing the same." The descriptive words used in the indictment in question "are that the defendant did feloniously make and forge a certain promissory note purporting to be the act of one Robert F. Springer, by which a pecuniary demand and obligation for the payment of the sum of five thousand five hundred dollars by the said Robert F. Springer to the said Jacob Clinton, purported to be created." It was further alleged as a reason for not describing the note more particularly, that it was in the possession of defendant. The note offered in evidence answered the description contained in the indictment. It purported to create a liability on the part of Springer to pay to Clinton the sum of five thousand five hundred dollars. It is true that the indictment did not give the date of the note nor the time when it was payable, nor do we deem this material, in view of the statute and the allegation in the indictment that the note being in the hands of defendant, could not be more particularly described. When the indictment contains enough to notify defendant of the charge, such minuteness of description may be dispensed with, and such was the design of the statute. *State v. Smith*, 31 Mo. 120; *State v. Fisher*, 65 Mo. 437; *State v. Watson*, Ib. 115.

It is also insisted that the court erred in allowing two witnesses, experts in comparing hand-writing, to give their opinion as to the genuineness of Springer's signature to the note in question, with two other writings of Springer, not connected with the cause, which were proved to be genuine. When proof of hand-writing is necessary to be made, all the authorities agree that it may be proved by a witness who is acquainted with the hand-writing of the party in controversy, and this rule has been relaxed in two cases: 1. When the writings are of such antiquity that living witnesses cannot be had, and yet are not so old as to prove themselves. Here the course is to produce other documents, either admitted to be genuine or proved to have been respected, treated and acted

upon as such by all parties, and to call experts to compare and testify their opinion concerning the genuineness of the instrument in question.   2.  When other writings, admitted to be genuine, are already in the case.   Here the comparison may be made by the jury, with or without experts.   1 Green. Ev., § 578.

The writings offered in evidence in this case, as standards of comparison, are not embraced in either of the above classes, but were irrelevant to the record and under the common law rule were inadmissible.   For the rejection of such evidence, two reasons have been assigned, viz: "First, the danger of fraud in the selection of the writings offered as specimens for the occasion ; and secondly, that if admitted, the genuineness of these specimens may be contested, and others successively introduced, to the infinite multiplication of collateral issues, and the subversion of justice.   To which may be added the danger of surprise upon the other party, who may not know what documents are to be produced, and may not, therefore, be prepared to meet the inferences to be drawn from them.   The same mischiefs would result, if the same writings were introduced to the jury through the medium of experts."   1 Green Ev., Sec. 580.   It may, however, be observed that in England this rule has been overthrown by an act of parliament, passed in 1854, in relation to procedure in civil cases, and to be found in Vol. 94 of Statutes at Large of the United Kingdom, and Chap. 125, p. 800, 17–18, Vic., in which it is provided, "That comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by witnesses; and such writings and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute."   It may also be observed that in 1865 another act was passed extending and making applicable the above rule in all criminal trials.   (Vol. 43, London Law Journal, Chap. 18, p. 75.)

While the common law rule which forbids the proof and admission in evidence of writings irrelevant to the record for the sole purpose of erecting a standard of comparison of hand-writings has been thus abrogated in England, and while the decisions of the courts of the different States of our own country are so conflicting as to be irreconcilable, we are disposed to adopt the rule extracted by Greenleaf (Sec. 581, Vol. 1), as being in harmony with a majority of them, leaving it to legislative action to make any change deemed desirable. The rule thus laid down is " that such papers can only be offered in evidence to the jury when no collateral issue can be raised concerning them, which is, only when the papers are either conceded to be genuine, or are such as the other party is estopped to deny, or are papers belonging to the witness, who was himself previously acquainted with the party's hand-writing, and who exhibits them in confirmation of his own testimony." This court has in the case of the *State v. Scott*, 45 Mo. 304, given its sanction to the rule thus laid down, and we are not disposed to extend its operation so as to allow collateral issues to be raised in regard to the hand-writing of instruments in no way relating to or connected with the cause. For the error committed in allowing such writings to be proved as standards of comparison, and in permitting witnesses to express their opinion as to the genuineness of the writing in question, based on a comparison of such standard with the disputed writing, the judgment must be reversed.

As the cause will be remanded for re-trial, we deem it proper to notice the objection to the action of the court in 3. CRIMINAL LAW: defendant as a witness; impeachment. allowing the State to inquire into the general character of defendant for the purpose of impeaching him as a witness, he having been sworn as a witness and having given evidence in the cause. This presents a question of the first impression in this court, and involves a construction of the act of 1877, (Acts of 1877, p. 356,) which provides as follows: " No person

shall be rendered incompetent to testify in criminal causes by reason of being the person on trial or examination; but any such fact may be shown for the purpose of affecting his or her credibility, provided that no person on trial or examination shall be required to testify, except as a witness on behalf of the person on trial or examination; and provided further, that the neglect or refusal of the person on trial or examination to testify in the case shall not raise any presumption of guilt, nor shall that circumstance be referred to by any attorney prosecuting in the cause, nor shall the same be considered by the court or jury before whom the trial takes place." In the solution of this question we may properly call to our aid the decisions which have been made by the courts of other States in the construction of statutes like ours. The following States have adopted statutes essentially like it: Nevada, New York, California, Massachusetts, Indiana, Connecticut and New Hampshire.

The act of Nevada provides that "in the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, the person so charged shall, at his own request, but not otherwise, be deemed a competent witness, the credit to be given to his testimony being left solely to the jury, under the instructions of the court. Nothing herein contained shall be construed as compelling any such person to testify; and in all cases wherein the defendant to a criminal action declines to testify, the court shall specially instruct the jury that no inference of guilt is to be drawn against him for that cause." In the case of *The State v. Cohn*, 9 Nev. 179, where the defendant testified as a witness, it was held that he was to be treated as an ordinary witness, subject to cross-examination, and even recall on the part of the State, for the purpose of asking any question proper to be propounded on cross-examination.

The New York statute provides, that "in the trial of all indictments,     *     *     *     and, in all proceed-

ings in the nature of criminal proceedings, in any and all courts, and before any and all officers and persons acting judicially, the person so charged shall, at his own request, but not otherwise, be deemed a competent witness. But the neglect or refusal of any such person to testify shall not create any prejudice against him." In the case of *Brandon v. The People*, 42 N. Y. 265, it was held that when a defendant voluntarily offers himself as a witness, he cannot invoke the legal principle, that his character cannot be attacked by the prosecutor, he not having himself first put it in controversy ; and it was further held that the question asked him on cross-examination, " have you ever before been arrested for theft ?" was a proper question, no suggestion of privilege having been made. It was also held that when he elected to become a witness, he left his position as defendant, and while on the stand was subject to the same rules and called upon to submit to the same tests which could by law be applied to other witnesses. This case was followed in 50 N. Y. 240, in the case of the *People v. Connors*, where it was held that a defendant availing himself of the privileges of the act assumed all the burdens necessarily incident to the position. In the case of *Fralich v. The People*, 65 Barb. 48, where defendant was tried and convicted of murder, held that when he took the stand as a witness he was subject to the same rules of examination, and to be contradicted as any other witness. In the case of *McGarry v. The People*, 2 Lansing 227, held " that when the defendant became a witness, he might be examined as to any matter pertinent to the issue; that his becoming a witness was a voluntary act, and when he made himself a witness, under the privileges of the act, he waived the constitutional protection in his favor and subjected himself to the peril of being examined as to any and every matter pertinent to the issue. Any other construction would render the statute the most effectual shield to crime and criminals that could be devised." *People v.*

*Carey*, Albany Law Journal, vol. 17, p. 432, decided February term, 1878.

In 41 Cal. 429, *People v. McGungill*, it was held that the fact that defendant offered himself as a witness did not change as to him the rules of practice with reference to the proper limits of a cross-examination; nor could the prosecutor legally claim that defendant should be made a witness against himself for the State. In Massachusetts, under a statute which allows a defendant in a criminal case, at his own request, and not otherwise, to testify in his own behalf, and provides, "that he shall be deemed a competent witness," Bigelow, C. J., held that he was competent not for a special purpose, or to give evidence only which shall operate in his own favor, but competent to testify to any facts relevant and material to the issue. Like all other witnesses, he is to tell the truth and the whole truth concerning any matter to be inquired about. If he offers himself as a witness, he waives his constitutional privilege of refusing to furnish evidence against himself, and may be interrogated as a general witness in the cause. In Indiana, under a similar act, in case of *Fletcher v. The State*, 49 Ind. 124, it was held that it was proper for the State to attack the general character of defendant for truth, but not his general moral character. This was followed in the case of *Mershon v. The State*, 51 Ind. 14. In *State v. Ober*, 52 N. H. 459, when a defendant voluntarily becomes a witness, held "that for the time being he occupies the position of a witness, with all its rights and subject to all its duties and obligations. If he gives evidence against himself it results from his voluntary act of becoming a witness, and not from compulsion." A similar doctrine was announced in *Town of Norfolk v. Gaylord*, 28 Conn. 309. In the latter State the law allowing defendants in criminal causes to testify had a short lived existence, being repealed in about one year after its enactment.

In all the States, so far as we are informed, where

laws similar to the one under consideration have been passed and judicially construed, all the courts agree that a defendant in a criminal case who exercises the option which the law gives him, of testifying in his own behalf, is to be treated and held as any other witness, and is liable to be cross-examined on any matter pertinent to the issue; and in Indiana, where the direct question was made as to whether the State could attack his general character for truth and veracity for the purpose of impeaching him as a witness, it was decided in the affirmative.

It is, however, insisted by learned counsel that our act is materially different from the acts of the various States which have been referred to. This, we think, is an error. It is true they are not couched in the same language, but the words employed convey the same idea. In all of them, as in ours, the defendant may, if he chooses, become a witness; he shall not be compelled or required to testify, and his declining to do so shall (neither) be considered by court nor jury to his prejudice. It is earnestly argued that the following words in our act, "that the fact that he is the person on trial may be shown to affect his credibility," not being used in the acts of other States, makes the difference essential, and excludes every other method of attacking the credibility of such witness. We think this position is not tenable. These words were doubtless incorporated in analogy to those used in Sec. 1, W. S., 1372, relating to witnesses, which provides that "no person shall be disqualified as a witness in a civil suit or proceeding at law or equity, by reason of his interest in the event of the same, as a party or otherwise,   *   *   but such interest may be shown for the purpose of affecting his credibility." This act, as well as the act of 1877, *supra*, is in derogation of the common law rule, and to hold that the words that " the interest of a party or witness (testifying under the law) might be shown for the purpose of affecting his credibility, excluded every other method of assailing it, would, we think, be against sound reason and in-

volve us in the anomalous position of throwing a shield
around such witness, interested as he may be, which could
not be thrown around witnesses wholly disinterested and
impartial. In other words, that the character of a witness
wholly disinterested in the subject matter of the suit might
be attacked by the adverse party and shown to be infa-
mous, while that of a witness interested in the case even
to the extent of being a party and entitled to the fruits of
the judgment, could not thus be impeached; or that the
presumption indulged in by the law that a witness is of
good character could be overthrown in the case of a wit-
ness wholly disinterested, but must remain unscathed and
indisputable when the party to the suit is himself the wit-
ness. We cannot give the act a construction which in-
volves a conclusion so much at war with reason.

It is also said that statutes in derogation of common
law are to be construed strictly. This is true, but they are
4. STATUTES.        also to be construed sensibly, and with a
view to the object aimed at by the Legislature. Sedg.
Const. of Con. & Stat. 274. They are to receive such con-
struction as not to allow the statute to infringe upon the
rules or principles of the common law to any greater ex-
tent than is plainly expressed in it. The act concerning
witnesses, *supra,* abolished the common law rule which
forbids any person having a pecuniary interest in the
event of a suit, from testifying therein, and declared that
the interest of such person might affect his credibility, but
not his competency as a witness; and under the canon of
construction applying to such acts, it cannot be so extended
as to prohibit an adverse party from availing himself of
another rule of the common law which allows him to im-
peach the credibility of such witness by attacking his gen-
eral character. The act of 1877 abolished the rule at
common law, that a defendant in a criminal case could
not be a witness in his own behalf and made the fact of
his being the defendant go to his credibility and not to his
competency, and the words in the act, " that he is the per-

son on trial may be shown to affect his credibility," have the same relation to the act that the words in the statute relating to witnesses, (Wag. Stat. 1372) "but such interest may be shown for the purpose of affecting his credibility," bears to it; and to hold that the words in either act would amount to forbidding an attack on the credibility of a witness testifying under either act, except as therein specified, would, we think, be not only violative of the rule of construction applying to such statutes, but against reason. The following words contained in the section, "provided that no person on trial or examination shall be required to testify, except on behalf of the person on trial or examination," were intended, we think, to leave it to the discretion of a defendant whether he would or not become a witness, and to forbid his being compelled to do so against his consent. They are equivalent in meaning to the words used in other acts above referred to, when it is said the " defendant, at his own request, may become a witness, but not otherwise " and that " nothing herein contained shall be construed as compelling any such person to testify."

In the light, both of authority and reason, our opinion is that a defendant, who, at his own option, becomes a witness, under the act of 1877, occupies the position of any other witness; is liable to be cross-examined as to any matter pertinent to the issue; may be contradicted and impeached as any other witness, and is to be subjected to the same tests. Under the rule adopted in this State and first enunciated in the case of the *State v. Shields*, 13 Mo. 236, and followed in the cases of *Day v. State*, 13 Mo. 422; *State v. Hamilton*, 55 Mo. 520; *State v. Breeden*, 58 Mo. 507, the question propounded as to the general character of defendant was a proper one.

It may be observed that the second instruction given on behalf of the State is objectionable in its phraseology, which can be corrected on another trial. It is more in the nature of a charge than an instruction and should be mod-

ified so as to direct the jury that the facts mentioned therein, if shown by the evidence, might be considered in determining the question whether the forgery was committed at the county of Phelps.

Judgment reversed and cause remanded, in which the other judges concur.

REVERSED.