WILLIAM HENRY OSTRANDER, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Writ of error to the Oyer and Terminer — only questions raised by exceptions can be reviewed — chap. 446 of 1874, does not deprive a prisoner of the right, under a plea of not guilty, to have the question of his sanity tried by the jury — nor does the finding of a commission appointed thereunder — Evidence — what may be shown to impeach a witness — statements made in the prisoner's presence are admissible — The General Term cannot grant a new trial on the merits or because of newly discovered evidence — Irregularities of jurors cannot be proved by their subsequent statements.*

Upon a writ of error to review a trial and conviction had in a Court of Oyer and Terminer the General Term can only consider such questions as were raised by exceptions duly taken in the court below.

A writ of error does not bring up for review an order, made at a Court of Oyer and Terminer held prior to the term at which the relator was convicted, denying a motion for leave to withdraw a plea of not guilty and interpose a plea of insanity.

Chapter 446 of 1874 does not take away from one accused of crime the right to have the question of his sanity passed upon by the jury under a plea of not guilty.

The provisions of the statute authorizing the court to appoint a commission to pass upon the question of the prisoner's sanity are permissive only and not compulsory. The finding of the commission does not prevent the prisoner from litigating the question of his sanity over again upon the trial under a general plea of not guilty.

The plaintiff in error was tried and convicted for the murder of his brother Lyman. The defense was that he acted in self-defense. Upon the trial a witness named Morse, called for the defense, testified that the sister of the plaintiff in error, Viola, told him that when Lyman fell after he was shot he had a revolver in his hand. On cross-examination he denied that he told Viola, in that conversation, to keep still about the matter, not to say anything and make it as light as she could for her brother. Subsequently a witness called for the prosecution was allowed, against the prisoner's objection and exception, to testify that he heard the first witness Morse make such a statement to Viola in the course of the conversation referred to.

*Held*, that the evidence was properly admitted as tending to show the hostility of the witness Morse to the prosecution.

Another witness was asked to state what the deceased had said as to an altercation between him and the prisoner on the morning of the day he was killed, the witness having already stated that the prisoner was present at the time. The court held that anything that was said in the prisoner's presence was admissible. The witness then testified that the deceased said that the pistol he had in the morning was not good for anything, that he only took it out to scare the prisoner and that he would not hurt a hair of his head.

*Held*, that under the circumstances it must be assumed that the prisoner was present when his brother made this statement; that if he were not it rested on him to prove it.

That if the prisoner had been informed some three hours before the commission of the crime that the pistol which was alleged to have been in his brother's possession was not good for anything, it was proper for the jury to have that fact before them in determining the motive which actuated him at the time of the killing.

The court at General Term cannot entertain a motion for a new trial upon the merits, or on the ground of newly discovered evidence.

It is a well understood and well settled rule that the affidavits or declarations of jurors cannot be received to impeach their verdict.

WRIT OF ERROR to the Oneida County Oyer and Terminer, to review the trial and conviction of the plaintiff in error of the crime of murder in the first degree. The trial took place at the October Oyer and Terminer in 1881, held in the Oneida Circuit. The plaintiff in error was sentenced to be hanged on the 15th day of December, 1881. On the 12th day of December, 1881, he was respited by the Governor, and on the 28th of January, 1882, further proceedings were stayed by a justice of this court upon the allowance of the writ of error.

Upon the 4th of the previous February, 1881, the defendant, in the Oyer and Terminer, had interposed a plea of not guilty to the indictment. Subsequently, upon an application made in March,

1881, by him, the court refused to allow the defendant to withdraw his plea of not guilty and interpose a plea of insanity. Upon the trial of the indictment, no evidence was given or offered relating to any alleged insanity. On the 21st of January, 1882, a motion for a new trial was made before the justice presiding at the Oyer and Terminer, upon the exceptions taken at the trial and upon the ground of alleged misconduct and irregularities of the jury, and also upon the ground of surprise in regard to the evidence of Andrew Williams and his wife, and upon the further ground of newly discovered evidence, which motion was denied, and no appeal has been taken from the order then made. In April, 1882, the former counsel of the prisoner withdrew from the case, and on the 30th of May, 1882, his present counsel was appointed by an order of the Oyer and Terminer to take charge of the case.

A motion was made at the General Term for a new trial, after notice thereof to the district-attorney, upon the following grounds, viz.:

" 1. Upon the ground of newly discovered evidence, important and material for a fair and just determination of this case.

2. For the misconduct and irregularities of the jurors, who were sworn to well and truly try and true deliverance make between the people of the State of New York and William Henry Ostrander, etc.

3. For errors of the Court of Oyer and Terminer in refusing to allow the plaintiff in error to withdraw his former plea of not guilty, or to expunge the same from the record of said court, as appears in said return of the clerk to the writ of error herein.

4. Upon the ground of surprise, to wit: By the introduction of evidence by the prosecution, which, if true, necessarily worked great prejudice to said Ostrander.    *    *

5. Upon exceptions to the admission or rejection of testimony during the progress of said trial."

At the June term of this court, a motion was made upon which an order was granted requiring the plaintiff in error to serve the printed case herein upon the district-attorney of Oneida county, on or before July 27, 1882, and to file the same with the clerk of Erie county on or before that day; also, the printed points herein; also, all affidavits to be used or submitted herein by the plaintiff to be served by July 10, 1882, and that all counter affidavits to be

used, be served by the twentieth of July. Also, providing that there might be presented to the court a certified copy of the proceedings before the oyer and terminer held by Judge CHURCHILL at Rome, March, 1881, upon the refusal to allow the plea of not guilty to be withdrawn, and also " that there may be submitted the certificate of said judge as to what then and there occurred, and his decision thereon." Affidavits and counter affidavits have been served and filed as the order to which we have just referred permitted. A certificate was presented, bearing date July 24, 1882, given by Judge CHURCHILL, in respect to the proceedings in the Oyer and Terminer in March, where the application, was made by the prisoner's counsel for leave to withdraw the plea of not guilty and " to plead instead, insanity as a whole defense to the indictment," in which certificate it is stated : " Objection was made on the part of the people, that that plea should have been presented at the time of the arraignment and could not be presented at any other stage of the trial, and the statute upon the subject was read. The court denied the application, and gave two reasons for its decision. First. That under the statute, it was very doubtful whether the court had the power to grant the application. Second. That the case did not seem to be one that required the court to exercise a doubtful power in behalf of the prisoner, since he would still have the full benefit of insanity as a defense under his plea of not guilty.

(Signed) JOHN C. CHURCHILL,
*Justice of the Supreme Court.*
*July,* 24, 1882."

*M. D. Barnett,* for the plaintiff in error.

*W. A. Matteson,* district-attorney, for the people.

HARDIN, J. :

In the argument submitted to us by the learned counsel for the plaintiff in error, it is urged that we should set aside the verdict against the prisoner, upon the ground that the same is " against the weight of evidence " or " against the law," or that " justice requires a new trial," whether an exception shall have been taken in the court below or not, and our attention is called to the act of 1855, and to *The People* v. *McCann* (16 N. Y., 58); *Rogers* v. *The*

*People* (3 Parker's Cr., 652), and *Done* v. *The People* (5 id., 364.) The position taken by the counsel cannot be sustained. The statute of 1855 does not apply to trials had in the Oyer and Terminer. In such courts exceptions must be taken, in order to authorize a review here of the rulings and decisions of that court. Section 33 of the Third Revised Statutes (6th ed., 1031), provides that the clerk shall make a return to the writ of error " containing a transcript of the indictment, bill of exceptions and certificate staying judgment." At page 1030, § 26, of the same volume, it is provided as follows, viz. : " On the trial of any indictment, exceptions to any decision of the court may be made by the defendant in the same cases and manner provided by law in civil cases, and a bill thereof shall be settled, signed and sealed." Exceptions must be taken at the trial to present a question for review here. (*People* v. *Casey*, 72 N. Y., 393 ; *Gaffney* v. *People*, 50 id., 416 ; *Fralich* v. *People*, 65 Barb., 48.)

We are of the opinion that the writ of error does not bring before us for review the decision made at the March Oyer and Terminer. (*Freeman* v. *People*, 4 Denio, 9 ; *King* v. *People*, 5 Hun, 297 ; *People* v. *Gardiner*, 6 Park. Cr., 149 ; *Willis* v. *People*, 32 N. Y., 720, opinion of DENIO, Ch. J.)

Besides, if the decision made at the Oyer and Terminer in March, 1881, was before us for review, we should not be inclined to disturb the same, as it appears :

*First.* That the same was made in the exercise of the discretion of that court.

*Second.* Chapter 446 of the Laws of 1874 was not intended to, and does not in terms, take away the right of trial of the question of insanity under the plea of not guilty. Under that law, had the plea of insanity been interposed, the court would not have been compelled to appoint a commission, although it would have the right to do so. The prisoner has no absolute right given to him by that statute to demand a commission after such plea is interposed. The statute is permissive and declares, viz. (§ 30, p. 570): " The court shall have power, with the concurrence of the presiding judge thereof, to appoint a commission." * * * Nor does the statute declare the finding of any commission that may be issued in such case conclusive upon the prisoner. He still would have the right to litigate the question of his insanity over again on the trial of the

main issue under a general plea of not guilty. (*Freeman* v. *People*, 4 Denio, 10.)

*Third.* It appears that the prisoner, upon the trial under the plea of not guilty, although, as we have seen, he was authorized to, offered no proof tending to establish his insanity at the time of the commission of the crime, or at any time subsequent thereto, and it is not unreasonable to suppose he thus waived any defense which he was authorized to make upon the ground of insanity. (*Pierson* v. *People*, 79 N. Y., 429.)

*Fourth.* If the prisoner is insane, a commission may yet be appointed by the Governor of the State to inquire in respect to such insanity. (Sec. 21, 3 R. S. [6th ed.], p. 845.)

The crime whereof the plaintiff is charged was committed on the 26th day of December, 1880, at Camden, Oneida county, upon George Lyman Ostrander, whose death was caused by the plaintiff in error by the discharge of a revolver, and the circumstances of that crime are principally detailed by Elizabeth Ostrander, the mother of the deceased and of the plaintiff in error, by Samantha Ostrander, Viola Ostrander, Carrie Ostrander, Gilbert Pettis and others, and certain threats made by the plaintiff were shown by Mrs. Eugene Williams and Andrew Williams, and from the testimony it appears that evidence was given tending to show that the crime was " perpetrated from a deliberate and premeditated design to effect death ; " and from a careful perusal of the evidence we are satisfied the trial court was justified, and required by the rules of law, to submit to the jury the question as to whether the crime came within the statute in regard to murder in the first degree, and we are not at liberty to disturb their verdict upon the finding of the facts essential to constitute the crime whereof they have convicted the plaintiff. The question of whether the accused acted in self-defense when he fired the pistol and thereby deprived his brother of his life was cautiously and fairly submitted to the jury, and we see no occasion to disturb their verdict, and should not be persuaded that it was our duty to do so were there an exception in the case fairly presenting that question for our consideration. (*Leighton* v. *The People*, 12 W. D., 467.)

Among the exceptions to which our attention has been drawn by the counsel for the plaintiff in error is one occurring when Ambrose

44          OSTRANDER *v.* PEOPLE.

Osburn, a witness called for the people, was giving his testimony. The bill of exceptions show that Frank A. Morse, a witness called for the defendant, testified as follows:

"Q. In that conversation with Viola Ostrander did she (Viola) say to you that when Lyman fell, after he was shot, he had his revolver in his hand?" The answer being, "Yes, sir."

The witness was cross-examined by the district-attorney, and Morse was asked the following question:

"Q. Did you tell Viola on that day to keep still about this matter, not to say anything and make it as light as she could for Henry? A. No, sir."

In the course of Ambrose Osburn's testimony he was asked: "Q. Did you hear Frank Morse say to Viola to keep still and say nothing about the case for it would be so much better for Henry?"

In the record following this question are found the words, viz.: "Objected to." Then follows again: "The Court — If it is the same question put to Morse it may be answered. Exception taken for the defendant.." The witness then answered: "I did hear him say that." It is now insisted that the question was "collateral to the issue, and the object and effect of it was to impeach Morse. It was no part of the conversation had in the evening with Viola;" and, also, "that the people were bound by Morse's answer, he having testified that he did not tell Viola to keep still about the matter and not to say anything and make it as light as he could for Henry."

It must be borne in mind that the objection is general, and that a general objection is unavailing to raise a position which might have been obviated had the attention of the court been specifically directed to the ground of the objection. Apparently Morse had given in his testimony part of an interview which transpired between himself and Viola, and denied the balance; and he denied that part of the interview that tended to establish his interest in the defense of the case and his hostility to the prosecution; and when he denied that he had "advised Viola to keep still and make it as light as she could for Henry," it was allowable to establish that declaration, made by him, by the witness Ambrose Osburn. We are, therefore, of the opinion that the exception presents no error. (*Starks* v. *People*, 5 Denio, 108; *Newton* v. *Harris*, 6 N. Y., 345; *Hotchkiss* v. *Germania Ins. Co.*, 5 Hun, 94; *Patterson* v. *People*, 12 id., 138.)

Next our attention is called to an exception found in the record, occurring during the redirect-examination of Elizabeth Ostrander, while she was narrating an interview with the deceased in the morning of the day of the commission of the crime, and after they had had the morning altercation, and after she had stated that the prisoner was in the room, as to which the record shows as follows, viz. :

" Q. Will you state what Lyman said about why he had taken this revolver ? " [Objected to.] The Court — Anything said in the presence of Henry may be stated. [Exception for defendant.] "A. He said he took it out to scare him ; he knew the pistol wasn't good for anything ; he took it out to scare Henry ; he done it on purpose to scare Henry ; he said he wouldn't hurt a hair of his head ; he did it to keep him still."

From the record, it appears that the court made its ruling based upon the testimony then given by the witness, that the accused was in the room when the declaration made by the deceased was so made. If the prisoner's counsel had then established, as he now contends, that the declaration was not made in the hearing of the accused, and after thus establishing the fact, had moved to strike out the evidence and his motion had been denied, the position here taken would have been pertinent, but, as the record stands, it must be assumed that the declaration was made in the presence of the accused. It bore upon the question whether the prisoner acted in self-defense at the time he discharged his pistol and caused the death. If the prisoner had been informed, some three hours before the commission of the crime, that the pistol which was alleged to to have been in the possession of Lyman, was " not good for anything," it was proper that the jury should have that fact before them in determining the motive which actuated the defendant at the time of the commission of the crime. Besides, the record shows that the court, at a subsequent stage, ruled that the evidence should be disregarded by the jury and instructed them to that effect, and that instruction was sufficient to cure any error that had been committed in regard to the reception of that evidence. (*Linsday* v. *People*, 67 Barb., 549 ; S. C., affirmed, 63 N. Y., 143 ; *Ruloff* v. *People*, 45 N. Y., 223 ; *People* v. *Greenfield*, 23 Hun, 454 ; S. C., affirmed in 85 N. Y., 75.)

Next, our attention is directed to an exception taken while Eliza-beth Ostrander was giving her testimony in respect to threats made by the accused, and the record shows the question and exception was as follows, viz.:

" Q. Will you bring to your mind the threat made at that time and tell the jury what it was?" [Objected to as uncertain, indefi-nite, incompetent and improper.] "A. The time Stephen — these boots — made a mistake and took these boots to Connecticut. Mr. Sayles objected to that and asked to have it stricken out. Stricken out."

We are of the opinion that the portion of the record that we have quoted presents no error.

Having found no error in the progress of the trial presented by the bill of exceptions calling upon us to disturb the verdict of the jury, we now turn our attention to another branch of the case pre-sented by the affidavits submitted by the plaintiff in error upon the motion for a new trial "upon the merits," or on the ground of newly discovered evidence.

· *First.* We think, by the authorities in this State, it is well settled that such a motion as the one now before us cannot be entertained by this court. In the case of *Eastwood* v. *People* (3 Parker's C. R., 25) the question of practice was not considered, although affidavits were there read to correct errors arising out of irregularities; and as the question of practice was not raised and discussed in that case we cannot follow it as an authority sanctioning such prac-tice. The practice is unauthorized as the following authorities establish: *Fralich* v. *People* (65 Barb., 48); *Willis* v. *People* (32 N. Y., 715); *Gaffney* v. *People* (50 id., 416); *People* v. *Casey* (72 id., 393); *People* v. *McMahon* (2 Parker, 672).

Again, it appears that a motion was made in the court below upon the ground of newly discovered evidence and of the alleged misconduct of the jury, and many of the affidavits now presented were served and used on that motion. That motion was denied and no appeal has been taken from the decision of the court below on that motion, nor has any *certiorari* been obtained to review that decision. We are not authorized to review it, as the decision of an inferior tribunal can only be reviewed when properly presented to this court, and it may well be doubted whether we have any juris-

diction to review. the decision made upon that motion. (*Leighton* v. *People*, 12 Weekly Dig., 467.)

Nor do we think, upon the papers and record before us, according to the well settled practice, we have any authority to entertain a motion to set aside the verdict of the jury upon the ground of their supposed misconduct. Questions relating to the conduct of the jury properly belong to the trial court, and can be considered in this court only when presented by way of a review of the decision or determination of the inferior court. ( *Willis* v. *People*, 32 N. Y., 719.) Chapter 295 of Laws of 1876, and *Leighton* v. *People* (*supra*), construing that statute.

As this is a capital case, although we are of the opinion that the questions just adverted to are not properly here for review, and although we cannot sanction the practice adopted by the plaintiff in error, we have looked into the affidavits that have been submitted to us in respect to the alleged newly-discovered evidence, and also the opposing affidavits, and we are satisfied, from a full inspection of them, that were the question properly before us in respect to the newly discovered evidence, it would be our duty to deny the application made in that regard. (*Carpenter* v. *Coe*, 67 Barb., 411; *Gautier et al.* v. *The Douglass Mfg. Co. and others*, 52 How., 325; *Harrington* v. *Bigelow*, 2 Denio, 109.)

The affidavits which are presented in behalf of the people clearly point to over persuasion, not to say fraud, practiced upon Elizabeth and Samantha Ostrander, when they were induced to make the statements found in the affidavit of Elizabeth Ostrander and the unverified letter of Samantha Ostrander. The affidavit of the mother and the letter of the sister of the accused are completely explained away by their respective affidavits used in opposition to the motion of the accused. If we were called upon to balance those affidavits with the affidavit and letter submitted on the motion, we should be inclined to give credence to the statements found in the opposing affidavits, especially as we call to mind that a contrary conclusion would require us to believe what seems almost incredible, that a mother and sister could have deliberately and persistently committed the perjury imputed to them in the course of the trial of a son and brother where his life or death was involved. Charity to human nature leads in the direction of the conclusion we

have indicated, and we might well hesitate before concluding, upon any of those affidavits before us, or upon affidavits like those, that such perjury had been committed.

We have also looked into the affidavits in respect to the alleged misconduct of the jury submitted to us, and those in opposition thereto. *First.* It is a well understood and settled rule that affidavits of jurors or the declarations of jurors cannot be received to impeach their verdict. (*Thomas* v. *Chapman and another*, 45 Barb., 98; *Brownell* v. *McEwen*, 5 Denio, 367; *Green* v. *Bliss*, 12 How., 428; *Gale* v. *N. Y. C. & H. R. R. R. Co.*, 53 id., 385; *Reese* v. *Stadler*, 54 id., 492; *The People* v. *Draper*, 28 Hun, 1.

*Second.* The opposing affidavits are sufficient to overthrow all evidence legitimately before us in respect to the misconduct of the jury. While there are some circumstances relating to the conduct of the jury which are to be regretted and disapproved, we are of the opinion that if the question was properly before us, according to well established precedent, we should not be following precedents if we interfered by setting aside the verdict. (*Wilson* v. *Abrahams*, 1 Hill, 207.)

It is proper to observe that the indictment was found prior to the time the Code of Criminal Procedure took effect, and that its provisions do not apply to this case. (See Code of Criminal Pro., § 962.)

The views which we have already stated lead us to conclude:

*First.* That the motion for a new trial upon the ground of newly discovered evidence, as well as the motion to set aside the verdict of the jury upon the ground of alleged misconduct, should be denied.

*Second.* That the judgment and conviction should be affirmed.

*Third.* The proceedings should be remitted to the Oyer and Terminer of Oneida county, with instructions to proceed in the premises.

Motion denied, conviction and judgment affirmed, and proceedings remitted to the Oyer and Terminer of Oneida county, with direction to proceed.

SMITH, P. J., and HAIGHT, J., concurred.

Motion for new trial denied; conviction and judgment affirmed, and proceedings remitted to the Court of Oyer and Terminer of Oneida county, with directions to proceed thereon.